Treat, Justice, delivered the opinion of the court: On the 31st of December, 1838, the probate justice of the peace of St. Clair county allowed certain claims against the estate of Samuel Scott, the plaintiff’s intestate, in favor of Crow & Tevis, the defendants in error. On the 7th of February, 1840, the probate justice filed a report of his proceedings in the matter, in the circuit court. The circuit court, on motion, rejected [* 184] the report, on the ground that it was not examinable in that court. This decision is assigned for error. In order to determine whether the circuit court decided correctly, an interpretation of the “ act to provide for the election of probate justices of the peace,” approved 4th of March, 1837, becomes necessary. Acts of 1837, 176. This court, in the case of Gibbons v. Johnson, 3 Scam. 61, decided, that appeals from the decisions of a probate justice, in the exercise of powers conferred by the third and fourth sections of this act, must be taken in the same manner, as is provided in cases of appeals from the judgments of justices of the peace. These sections confer on this officer the ordinary powers of a justice of the peace in civil cases, and additional jurisdiction to the amount of one thousand dollars, in cases where an administrator or executor is a party plaintiff or defendant. The fifth section confers on him certain ministerial powers therein enumerated, and all other powers of a like character, which the court of probate was formerly authorized to exercise. The seventh section invests him with all the judicial powers theretofore exercised by the probate court, but requires him in the exercise of such powers to report his proceedings therein to the next term of the circuit court, for approval or rejection ; and if approved, the same are to be considered as a matter of record in said court. It is under the provisions of this section, that the report in question was made. There seems to be four classes of powers conferred on the probate justices by this act: First. The ordinary civil jurisdiction of a justice of the peace, conferred by the third section; Second. Jurisdiction to the amount of one thousand dollars, in cases where an administrator or executor is a party, given by the fourth section; Third. Ministerial powers vested in him by the fifth section; Fourth. Such judicial powers as the old probate court was authorized to exercise, and as are not embraced in the first and second classes, as conferred by the seventh section. There is no difficulty in relation to the three first classes of powers. The decision in the case of Gibbons v. Johnson determines the mode of appealing from decisions made in the exercise of the first and second classes of powers. The tenth section of the act provides, that appeals from the decisions of a probatejus-tice, in the exercise of his ministerial powers, shall be allowed and taken in the same manner that appeals were taken from the decisions of the old courts of probate. This provides for the third class of powers. The language of the 133d and the three following sections of the act relative to wills and testaments, (R. L. 653 ; "* 185] Gale’s Stat. 718,) providing for, and regulating appeals from the decisions of the old probate court, is comprehensive enough to embrace all cases not included in the third and fourth sections of the act of 1837. We are of the opinion, that these provisions of the old law are still in force, and applicable to all cases not covered by the decision in Gibbons v. Johnson. The plaintiff in error, then, could have appealed from the decision of the probate justice in the present case, and had it reviewed in the circuit court, by tendering his bill of exceptions, and entering into bond within ninety days. This case is doubtless one of those included in the fourth class, and required to be reported to the circuit court by the seventh section. It remains to be seen, what is the duty of the circuit court, and the effect of its action on the report. It is to be observed, that the act makes no provision for the summoning of the parties into the circuit court; nor does it seem to contemplate a trial de novo. The court is only to act on the transcript, by approving or rejecting it. The only effect that seems to follow an approval of the report is, that it becomes a matter of record, and may be certified as such. No greater or additional consequence seems to be given to the action of the circuit court. This view of the case is strengthened by referring to the sixth section of the act, which authorizes transcripts of the proceedings of the probate justice, in the exercise of his ministerial powers, to be filed in the circuit court, and provides that the same shall be conr sidered as matters of record in the circuit court, and' that copies thereof may be certified as other records of that court. We are inclined to the opinion, that the only object contemplated by the seventh section was to give the like effect to transcripts of proceedings had under the. powers therein conferred. The reason for this requisition probably grew out of the peculiar organization of the.court. The old court of probate was one of record; the present one is not. By requiring its proceedings to be reported, they are elevated to the dignity of records, and may be certified and used as such. If this be the proper construction of the act in question, the duty of the circuit court is plain and obvious. It is to inspect the report, and determine whether it is in due form, and shows a decision properly made in the class of powers required to be reported. If this appears affirmatively from the face of the report, it is to be approved, and then becomes a matter of record. If otherwise, it is to be rejected, and fails to become a matter of record. The act requires the report to be made at the first term of the circuit court. This is only discretionary in the probate justice and may be made afterwards. In the present case the circuit court ought to have examined ■ the report, and either approved or rejected it. The court refused to take cognizance of it, and rejected it without examination on the ground that it was not examinable in that [* 186] court. This was erroneous. The judgment of the circuit court is reversed, with costs, and the cause remanded for further proceedings. Judgment reversed.